UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MANUEL MEDRANO,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | No. CV 14-00012-AS<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

On January 2, 2014, Plaintiff Luis Manuel Medrano filed a Complaint seeking review of the denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Docket Entry No. 3.) The parties consented to proceed before a United States Magistrate Judge in February 2014. (Docket Entry Nos. 9, 10.) Defendant then filed an Answer to the Complaint and the Administrative Record ("A.R.") on May 23, 2014. (Docket Entry Nos. 12, 13.) On August 4, 2014, the

1

parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 15.) The Court has taken the matter under submission without oral argument. See C.D. Cal. L.R. 7-3.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff filed applications for DIB and SSI on September 23, 2009, alleging disability commencing on January 26, 2010. (A.R. 186-98.) Plaintiff alleges disability as a result of a stroke that he had on January 26, 2010. (Joint Stip. 3.)

After the Commissioner denied Plaintiff's claims initially and on reconsideration, Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"). (A.R. 134-49.) The ALJ, Sherwin F. Biesman, held a hearing on August 2, 2012, taking testimony from Plaintiff and vocational expert ("VE") Frank Corso. (A.R. 67-81.)

On August 13, 2012, the ALJ issued a decision denying Plaintiff's application for DIB and SSI. (A.R. 33-44.) The ALJ found that Plaintiff has the following severe impairments: (1) residuals from a stroke, (2) chronic right facial pain, (3) hypertension, and (4) decreased vision, correctable by eyeglasses. (A.R. 35.) However, the ALJ found that Plaintiff's medically determinable mental impairment of an adjustment disorder is not severe. (A.R. 36.)

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of medium work. (A.R. 38 (citing 20 C.F.R. §§ 404.1567, 416.967).) In determining Plaintiff's RFC, the ALJ discounted Plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms. (A.R. 39.) The ALJ identified inconsistencies between Plaintiff's alleged symptoms, his daily activities, and the objective medical evidence. (A.R. 39–41.) Once the ALJ determined Plaintiff's RFC, he compared it to Plaintiff's past relevant work as a plater and plastics supervisor. (A.R. 42.) The ALJ relied on the VE's testimony to decide that Plaintiff could perform that work, particularly emphasizing the duties required of a plastics supervisor, DOT No. 556.130-14.

Accordingly, the ALJ found that Plaintiff was not disabled from January 26, 2010, through the date of the decision. (A.R. 42.) Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on October 31, 2013. (A.R. 7-20.) The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

## PLAINTIFF'S CONTENTION

Plaintiff contends that the ALJ did not provide clear and convincing reasons for rejecting his testimony. (Joint Stip. 4.)

/ / /

/ / /

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence supports a finding, "a court must consider [] the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

**APPLICABLE LAW**

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

4

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (holding that the ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling her to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling

5

the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all her impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant cannot do the type of work that she has done in the past or does not have any past relevant work, the ALJ proceeds to step five. At step five, the ALJ determines whether — taking into account the claimant's age, education, work experience, and RFC — there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Tackett, 180 F.3d at 1098.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

6

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and is free from material[1] legal error.

**A.   The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

Plaintiff challenges the ALJ's decision to discount his testimony regarding his physical and mental impairments. According to Plaintiff, the ALJ's reliance on his daily activities and objective medical evidence was misplaced. (Joint Stip. 6-7.) As set forth below, the Court finds that the ALJ properly relied on the medical evidence and Plaintiff's daily activities to discount Plaintiff's credibility, providing "clear and convincing" reasons for finding Plaintiff not credible.

   1.   Legal Standard

An ALJ's assessment of a claimant's credibility and the severity of his or her symptoms is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

7

believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotations and citation omitted). If such objective medical evidence exists, the ALJ may not reject the claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Smolen, 80 F.3d at 1282 (emphasis in original). Instead, in finding the claimant's subjective complaints not credible, the ALJ must make "specific, cogent" findings that support the conclusion. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.3d at 834.

2. Daily Activities

In finding that Plaintiff's testimony lacked credibility as to the intensity, persistence, and limitations of his symptoms, the ALJ

8

relied in part on Plaintiff's activities of daily living. (A.R. 39.) But Plaintiff contends that these daily activities — including regular walks and household chores — are "dismal at best" and that the ALJ failed to consider the differences between those activities and Plaintiff's ability to work an eight-hour day. (Joint Stip. 6.)

A claimant's ability to perform a range of daily activities can be used to assess his credibility. See 20 C.F.R. §§ 404.1529(a), 416.929(a); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting."). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Instead, the relevant inquiry is whether the skills involved in the daily activities could be transferred to the workplace. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ pointed out that Plaintiff is "still quite active." (A.R. 39.) While Plaintiff alleges a weakness in his lower extremities, he takes walks every day. (A.R. 39, 252.) The walks are for 25 minutes, after which Plaintiff rests for 10 to 15 minutes. (Id.) The ALJ found that this level of activity suggests that Plaintiff "could easily sit, stand, and walk through a regular workday with regular rest breaks." (A.R. 39.) The ALJ also

9

1 considered inconsistencies in Plaintiff's statements: In the March
2 2011 Functional Report, (A.R. 39, 247-54), Plaintiff stated that he
3 could not put on shoes, socks, or jeans without assistance, but then
4 stated that he was able to make the bed and pick up items. (A.R. 39,
5 248-49.) The ALJ found this evidence to suggest that Plaintiff's
6 balance "is not severely impaired but he may find activities
7 requiring fine dexterity somewhat difficult." (A.R. 39.) The Court
8 finds that the ALJ's consideration and interpretation of Plaintiff's
9 daily activities is supported by substantial evidence.

11 In rejecting the ALJ's interpretation of his daily activities,
12 Plaintiff cites his testimony and portions of the March 2011
13 Functional Report in which he stated that he struggles with tasks
14 like buttoning his shirt and tying his shoes, and that his family
15 helps by driving him places and doing certain chores like vacuuming.
16 (A.R. 75-78, 247-54.) Although Plaintiff contends that the ALJ at
17 times mischaracterizes his daily activities, Plaintiff's arguments
18 largely boil down to an alternative interpretation of the record.
19 But the fact that the evidence is susceptible to more than one
20 rational interpretation does not negate the ALJ's equally rational
21 findings. See Burch, 400 F.3d at 680-81; see also Rollins v.
22 Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("[T]he ALJ's
23 interpretation of [the plaintiff's] testimony many not be the only
24 reasonable one. But it is still a reasonable interpretation and is
25 supported by substantial evidence; thus, it is not our role to
26 second-guess it.")
27 / / /

3.  <u>Objective Medical Evidence</u>

Plaintiff also challenges the ALJ's reliance on objective medical evidence to discount Plaintiff's testimony on the intensity, persistence, and limitations of his symptoms. (Joint Stip. 6-7.) According to Plaintiff, the medical evidence actually supports his testimony. (<u>Id.</u>) For example, Plaintiff points to optometrist Dr. Paola Wong's diagnosis of "unstable and possibly worsening visual field defects due to stroke," and neurosurgeon Dr. Ayman Salman's assessment that Plaintiff has decreased sensation in the right upper and lower extremity. (<u>Id.</u>; A.R. 308, 534-36.)

However, Plaintiff's citations to the medical evidence are selective and somewhat misleading. Some of Plaintiff's citations are to portions of medical reports containing a summary of his complaints, as opposed to a doctor's diagnosis or medical opinion. (<u>E.g.</u>, A.R. 316, 352.) With respect to his vision problems, the ALJ points out that Dr. Wong and other medical experts actually found that Plaintiff's visual acuity could be improved with the use of spectacles and that Plaintiff seemed able to do "physical activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, and speaking." (A.R. 40, 534-36.) The ALJ acknowledged Plaintiff's claims of decreased sensation in the right extremity, but found that this condition did not prevent Plaintiff from performing "medium exertional level work." (A.R. 41.)

/ / /
/ / /

11

In contrast to Plaintiff's selective review of the medical evidence, the ALJ reviewed the reports and opinions of multiple doctors in assessing Plaintiff's credibility. (A.R. 39–41.) Dr. Cohenour — a workers' compensation neurologist — did not report any problems with Plaintiff's concentration or attention during any of the examinations conducted between November 2010 and February 2011. (A.R. 39, 512–13.) Dr. Cohenour also gave Plaintiff a five-percent whole person impairment, with ten percent due to the recent stroke. (Id.) "[I]n the doctor's opinion, the claimant was at a permanent and stationary plateau from a neurological point of view for over a year." (A.R. 39–40.) The ALJ found that Dr. Cohenour's evaluation "suggests that Plaintiff could perform many work or work-like activities." (A.R. 39.)

As discussed above, the ALJ also determined that Plaintiff's vision is now stable and that his post-stroke condition has remained stable based on reports from Plaintiff's own treating physician — Dr. Yuriy Verpukhovsy — as well as from optometrist Dr. Wong. (A.R. 41, 327–28, 534–36.) In addition, the ALJ relied on the consultative examination of Dr. Sarah Maze, who concluded that Plaintiff's recovery from the stroke had been good overall. (A.R. 41, 529.) According to Dr. Maze, Plaintiff can lift, push, pull, and carry without restriction, and is able to stand and walk without restriction. (A.R. 530.) The ALJ gave "great weight" to the opinion of Dr. Maze because it was consistent with the overall treating record. (A.R. 41, 527–30.) However, the ALJ also considered

12

Plaintiff's subjective complaints in finding that Plaintiff was limited to a medium exertional level of work. (A.R. 41.)

The Court finds that the ALJ's reliance on and interpretation of the medical evidence meets the substantial-evidence standard. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the opinions of examining doctors and medical experts can serve "as substantial evidence supporting the ALJ's findings with respect to [the claimant's] physical impairment and exertional limitations"); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (holding that the ALJ properly discounted the claimant's allegations where no doctor "expressed the opinion that [the claimant] was totally disabled" or "implied that [the claimant] was precluded from *all* work activity").

"Although a lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681. Here, the ALJ properly relied on the lack of corroborating medical evidence as a factor in his credibility assessment of Plaintiff. The ALJ's overall conclusion that Plaintiff's testimony about the intensity, persistence, and limitations of his symptoms lacked credibility was based not only on the medical evidence, but also on Plaintiff's daily activities. The Court finds that the ALJ has stated "clear and convincing" reasons for discounting Plaintiff's credibility.

**CONCLUSION**

"If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, the Court finds that the ALJ's credibility finding is supported by substantial evidence.

**ORDER**

For all of the foregoing reasons, this Court affirms the decision of the Administrative Law Judge.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 30, 2014.

                                                                     _/s/_____
                                                                     ALKA SAGAR
                                                                     UNITED STATES MAGISTRATE JUDGE